## NERGER et al. v. EQUITABLE FIRE ASSOCIATION.

Under Rev. Code Civ. Proc. § 136, providing that, in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties, a party, who fails to test the sufficiency of an amendable complaint by demurrer but answers to the merits, cannot demand a reversal on the ground that his general objection to the introduction of any evidence because the complaint did not state a cause of action was overruled by the trial court.

A complaint on a fire policy alleged that plaintiffs had duly fulfilled and performed all the conditions and requirements of the policy on their part; that plaintiffs immediately after the fire gave defendant written notice thereof and of the loss, and on October 8, 1903, and within 60 days after the fire, rendered to defendant a written statement and proof of loss as mentioned in the policy. The complaint also alleged that more than 60 days had elapsed since the fire and ascertainment by defendant of the amount of the loss. **Held** that, in the absence of a demurrer, such allegations should be construed as equivalent to an allegation that the required proofs of loss had been furnished more than 60 days prior to the commencement of the action.

Where a fire policy provided that in case the parties could not agree as to the amount of a loss it should be submitted to arbitration, it was the duty of the insurer to take the initiative step by appointing an arbitrator and requesting insured to do likewise, and hence insurer's failure so to do constituted a waiver of the provision.

Defendant, in an action by a firm doing business under a name not disclosing the individuals composing it, having ample opportunity to ascertain that no certificate showing such names, etc., had been filed, as required by Rev. Civ. Code, §§ 1762, 1764, making the filing thereof a condition precedent to the firm's right to sue, but authorizing the filing thereof at any time, answered to the merits and waited until the cause had been nearly reached for trial, when it prayed leave to file an amended answer raising the objection that no such certificate had been filed. **Held** that, the proposed amendment being merely a plea in abatement, the denial thereof was not an abuse of the trial court's discretion.

In an action on a policy insuring a stock of merchandise, evidence **held** insufficient to establish that plaintiffs were guilty of false and fraudulent representations as to the value thereof as stated in the application.

(Opinion filed April 3, 1906.)

Appeal from Circuit Court, Day County. Hon. J. H. McCoy, Judge.

Action by E. A. Nerger and another, doing business as the Waubay Mercantile Company, against the Equitable Fire Association. From a judgment for plaintiffs, defendant appeals. Affirmed.

*Preston & Hannett* and *Alley & Anderson,* for appellant. *Sears & Potter,* for respondents.

FULLER, P. J. The complaint in this action to recover for the total loss of a stock of general merchandise kept for retail trade and covered by a fire insurance policy was first challenged, after answering to the merits and at the trial, by objecting to the introduction of any evidence on the part of plaintiffs for the reason that facts sufficient to constitute a cause of action were not stated therein. The exact contention is that it was nowhere alleged that before the commencement of the action 60 days had elapsed after due notice and proof of loss has been made by the insured and received by the company. Under the statute and uniform decisions of this court a party who fails to test the sufficiency of an amendable complaint by demurrer, but answers on the merits, is not in a position to demand a reversal on the ground that his general objection was overruled by the trial court. Section 136, Rev. Code Civ. Proc. 1903. Stutsman County v. Mansfield et al., 5 Dak. 78, 37 N. W. 304; Johnson v. Burnside, 3 S. D. 230, 52 N. W. 1057; McCormick Harvesting Machine Co. v. Faulkner, 7 S. D. 363, 64 N. W.

163; Whitbeck v. Sees, 10 S. D. 417, 73 N. W. 915; Finch et al. v. Park et al., 12 S. D. 63, 80 N. W. 155.

The contract of insurance made a part of the complaint contains the following provision: "The sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proofs of the loss have been received by the company in accordance with the terms of this policy." It is alleged in the complaint that, "The plaintiffs have duly fulfilled and performed all the conditions of said policy of insurance on their part and have fully complied with the requirements of said policy. The plaintiffs did immediately after said fire give defendant written notice of such fire and plaintiff's loss thereby, and that plaintiffs did on the 8th day of October, A. D. 1903, and within sixty days after said fire, render to defendant a written statement and proof of loss as mentioned in said policy. That more than sixty days have elapsed since the said fire and the ascertainment by defendant of the amount of plaintiffs' said loss, and that the whole of the said sum of $1,200.00 is now long past due and unpaid from defendant to plaintiff's, and that no part of said insurance has ever been paid." In the absence of a demurrer or an objection specifying the omission claimed to be essential to the complaint, the foregoing allegations were properly construed as referring to the time when the action was commenced and equivalent to the statement that the required proofs of loss had been furnished more than 60 days prior thereto. The parties disagreed as to the value of the insured property and counsel for the defendant contend that the failure to allege that an arbitration was had or an offer to arbitrate was made by plaintiffs renders the complaint insufficient, but this court has recently held that the company must take the initiative step, and have waived that condition of the policy by failing to appoint an arbitrator, and requesting the insured to do likewise, so that the point is determined adversely to the defendant and requires no further consideration. Norris v. Equitable Fire Association, 19 S. D. 114, 102 N. W. 306.

Although the complaint and the policy of insurance both recite that the Waubay Mercantile Company is a copartnership composed of E. A. Nerger and W. G. Elliott and the defendant had ample op-

portunity to ascertain from the public records whether a certificate of partnership had been filed as provided by sec. 1762 of the Rev. Civil Code of 1903, it answered to the merits and waited until the cause was about to be reached for trial before asking leave to interpose an amended answer for the purpose of raising the objection that no such certificate had been filed. Now, sec. 1764 of the same statute expressly provides for the removal of such disability to maintain an action by the act of filing a certificate at any time and the subject-matter of the proposed amendment, being merely a plea in abatement which apparently had been waived, it was not an abuse of discretion to deny the application. Heegaard et al. v. Dakota Loan & Trust Co., 3 S. D. 569, 54 N. W. 656.

On the 28th day of March, 1903, the plaintiff's stock of merchandise was insured by the defendant to the extent of $1,200, its destruction by fire occurred on the 26th day of August, following and proof of loss was duly served October 8th of that year. In procuring the insurance the property was represented to be worth about $10,000, exclusive of fixtures, and in the proof of loss as well as in the complaint in this action, its value was estimated at $8,775, but the defendant denies that such property was ever of any greater value than $2,250, and alleges that in procuring the insurance and making proof of loss plaintiffs were guilty of false and fraudulent representations. In addition to a general verdict in favor of the plaintiffs, the jury found especially as follows: "What was the actual cash value of the said stock of merchandise in question, exclusive of fixtures at Waubay, S. D., on the 27th day of March, 1903?' Answer. $9,838.24. What was the actual cash value of the said stock of merchandise in question, exclusive of fixtures at Waubay, S. D., on the 26th day of August, 1903, immediately before said fire? Answer. $8,918.54. Did the plaintiffs or either of them intentionally and willfully misstate to defendant, the actual cash value of the said stock of merchandise at the time plaintiffs procured the said policy of insurance from defendant? Answer. No. Did plaintiffs, or either of them, in their statements of loss to defendant, intentionally and willfully misstate to defendant the actual cash value of the said stock of merchandise at the time of the said destruction thereof, on the 26th day of August, 1903? Answer. No."

At the trial of the cause Mr. Nerger testified that he was then carrying on a general merchandise business and had been so engaged for more than 14 years prior to purchasing the stock in question, soon after which the insurance was procured, and there is not the slightest merit in the contention that no proper foundation was laid for the admission of the testimony or that the evidence is insufficient to sustain the verdict as to the value of the property destroyed. His undisputed testimony admitted without objection and fully corroborated is in part as follows: "We became the owners of this stock of merchandise by purchase on the 20th day of February, 1903, from E. W. Reick of Waubay, S. D. We took an inventory of said stock to ascertain its value after purchasing the same. Mr. Elliott and Mr. Weivers assisted in taking that inventory; each item was taken, and the cost price of each article was put down in a book. I arrived at the cost price of the different articles by the marks that were on the goods and also by our judgment of values of goods. I saw by the marks of values on the goods, they were tagged with the cost mark; the tags showed also the selling price. The cost mark and the selling mark on these tags were the marks of Mr. Reick; he informed us what each character was." Referring to the invoice books, which were clearly identified and properly introduced in evidence after the proper foundation had been laid, the witness further testified: "The page marked 'Exhibit 32,' and contained in Exhibit 7, those figures there were the total footings of the different pages in the different books; those figures, $8,-032.69, indicate the wholesale cost of merchandise in the store at the time of the inventory; $310.85 indicates the costs of the fixtures in the store. The figures, $417.60, indicate the estimated freight on the stock and fixtures. The figures $419.16 mean in value, that would be added value. And the figures, $8,760.60, is the total worth of the stock, the fixtures and the freight added. After taking possession of this stock of merchandise on or about the 20th of February, 1903, I made additions to the stock of merchandise from time to time. I have the means of knowing the amount of the cost value of these invoices of goods that I added to this stock, after I took this inventory, and the date of the fire, August 20, 1903. They were billed out to us at what they cost us. I know these

bills here, from 5 to 28 inclusive.   They are the invoices of the goods that I received into the stock at Waubay, S. D., covered by the policy of insurance in this case.   They represent the cost of the goods without freight, the goods received and the description of the goods received, and the cost less the freight, between February 20, and August 26, 1903.   They were received by the Waubay Mercantile Company at Waubay, S. D., at about the time indicated by the invoices.   They went into and formed a part of the stock of merchandise owned by the Waubay Mercantile Company, and covered by the policy of insurance in this case.   I have means of knowing the amount of goods that I sold; we kept track of the amount of goods sold.   We received between the 20th of February, 1903, and the 26th day of August, 1903, about $2,800 worth, and we sold out of this stock of merchandise between those dates a little over $2,300, worth.   And I think we had more stock at the time of the fire than we had at the time of the inventory, about $500, besieds what the profits would be on the goods sold. * * * I knew that was the amount of goods represented at the time of the inventory.   I made examination of the stock of goods; I had been down there.; had examined the stock;  I looked over it every time I was down there.   In examining it the first time I was down there it must have been there three or four hours ; I went through stock thoroughly, and looked it over and looked at the various articles, and looked into the boxes of shoes to see how the styles of the shoes were. * * * I  xamined this stock prior to the trade with Mr. Reick three times. The storeroom where these goods were contained was quite a large storeroom, divided into two rooms.   The character and class of the goods was made up of dry goods, groceries, hardware, crockery, clothing, boots and shoes, and one thing and another usually kept. Prior to the time I made this purchase I was engaged in the general mercantile business in ·Webster.   I have been here about four years and a half.   I carried at Webster substantially the same class of goods that I got of Reick.   There might have been a few remnants and pieces such as might be at a country store."

From the testimony of E. W. Reick we quote as follows : "My business in 1902, and January in 1903, was general merchandise. Since January, 1903, I have been in the general merchandise bus-

iness; have been in the business for the last five or six years. I sold my stock of merchandise to the Waubay Mercantile Company. They took an invoice or inventory of the stock of merchandise in February, 1903. I transferred the stock to the Waubay Mercantile Company, February 18, 1903. Q. What, if anything did that stock of merchandise, and each article thereof have upon it? A. Had a tag with the cost mark and retail price on it. I prepared those tags and placed them on the different articles. I arrived at the cost price of these articles of merchandise from the invoices of whole-sale prices. When I disposed of this stock of merchandise to the Waubay Mercantile Company, prior to their taking an inventory thereof, I made them acquainted with my cost marks, or tags there-on. * * * The first of the year 1903 I took an inventory of the stock. The actual cash value of my stock of merchandise on the 1st day of January, 1903, was between $8,000 and $9,000, and the actual cash value of the stock of merchandise on the 18th day of February, 1903, was between $8,000 and $9,000. I arrived at this valuation January 1, 1903, by an invoice; every article was taken down by myself and wife and sister, I took down from the shelves the goods and put it on the books, consisting of hardware, grocer-ies, notions, clothing, boots, shoes, and hats and caps. This inven-tory was taken the first three or four days of January, 1903."

George B. Laselle was shown to be an experienced dealer in a similar class of merchandise and had seen the stock in question daily from the time it was insured until the loss occurred, and his testimony is in part as follows: "I had run a general store in the same building. I made an examination of this stock about the 10th day of February, A. D. 1903, and took an invoice. We added up the amount of goods he had received and subtracted the amount of cash he had taken in. This was about a week or two before the sale to plaintiffs. I saw the stock of goods at the time the mercantile company bought them, and I saw them again for the last time about the 1st of August, A. D. 1903. At that time, August 1, 1903, the stock was larger than in February, when I and Mr. Reick took the inventory. It was a marketable stock of goods."

The foregoing excerpts from the record make the inference ir-resistible that this extensive stock of marketable merchandise was

at all times worth about what was claimed and it is needless to quote further from corroorating testimony. It appears from the evidence offered by the defense to defeat the case as made by plaintiffs that at the time Mr. Reick sold this merchandise to them he received in full consideration therefor $1,500 in cash and 320 acres of North Dakota land, worth not to exceed $15 per acre; but that fact is insufficient to justify the conclusion that fraud was resorted to in procuring the insurance or that the stock of merchandise was worth substantially less than the amount claimed. It is admitted that the premium was paid, the policy executed, and the property of plaintiffs described therein was destroyed by fire, and the evidence is abundantly sufficient to show its value as claimed, and that the required proof of loss was duly given.

From a careful examination of the entire record we are convinced that no errors of law occurred at the trial, either in the admission of evidence or in the court's charge to the jury, and the judgment appealed from is affirmed.