## DRAKE et al. v. GREAT NORTHERN RY. CO.

Where the name of a firm did not fully disclose the names of the partners, it was within Civ. Code, § 1762, requiring partnerships having fictitious names to file certificates stating the names of the partners and their places of residence with the clerk of court of the county where the partnership has its main place of business, and requiring the publication of such certificate.

Failure of a partnership to publish and file a certificate disclosing the names and residences of the partners, as required by Civ. Code, § 1762, must be taken advantage of in an action by the firm by answer amounting to a plea in abatement.

Failure of a firm to publish and file certificates disclosing the names and residences of the partners, as required by Civ. Code, § 1762, cannot be cured after action brought by the firm, where the effect of the omission has been properly raised by answer in the nature of a plea in abatement.

Both at common law and under the Codes the filing of a plea in bar without a plea in abatement is a waiver of the right to interpose a plea in abatement.

A defendant cannot by an amended answer without leave of court interpose a plea in abatement, where no such plea was contained in the original answer, after trial had and a new trial granted.

Where, in an action by a firm, a trial was had resulting in a verdict for plaintiff on issues joined not raising any objection to defendant's failure to file and publish certificates showing the names and residences of the partners composing the firm, as required by Civ. Code § 1762, it would have been an abuse of discretion for the trial court after granting a new trial to allow defendant to raise such objection by plea in abatement.

Where the court in one part of its charge fully and fairly instructed on contributory negligence, it could not insist on appeal that the court erred in refusing defendant's request on such subject because the court in summarizing its instructions omitted to refer to contributory negligence, to which summary defendant did not except.

Where defendant saved no exception to the admission of any of the evidence, nor to the instructions of the court, the instructions constituted the law of the case.

Assignments that there was no evidence of any failure of duty on defendant's part owing to plaintiff, or of defendant's failure to fulfill its part of the contract sued on; that there was no evidence that defendant was guilty of any specific acts of negligence relative to the shipment of the horses in question; and that there was no evidence of gross negligence on plaintiff's part—were unsustainable grounds for a new trial, if there was any evidence showing actionable negligence on defendant's part.

Where, defendant, having contracted to ship certain horses on

a through train, in fact, shipped them on a way freight, and, after keeping them in the cars for an excessive period, unloaded them in improper stock pens, from which they were permitted to escape and roam over the prairies without food or shelter in a blizzard, and after the stock was recovered they were again placed and kept in the car for several hours before they were moved, when they were in a weakened condition, without notice to plaintiff, there was evidence of negligence on the part of the carrier.

A shipper's default in failing to perform the duties required of him by a live stock transportation contract was no defense to the carrier's liability for its default, unless the default of the shipper was one of the causes of the damage.

A specification in support of an assignment for new trial that the evidence did not justify the verdict, in that it disclosed that plaintiff was himself negligent which contributed to the injury of the horses shipped, and for each specified item of negligence specified in his complaint, was fatally defective for failure to point out any act or acts of negligence on plaintiff's part.

Where a carrier is required to unload stock for food and rest during transportation, it may provide a yard other than the stockyard, if reasonably convenient and without expense to the shipper; he being entitled to attend to the feeding and watering himself.

Where a carrier, required to unload stock in transit, desires to furnish a yard away from its tracks, it assumes the duty to make the transfer from the cars to the yard; and is liable for any loss or damage to the stock while so doing.

(Opinion filed, Oct. 11, 1909.)

Appeal from Circuit Court, Fall River County. Hon. W. G. Rice, Judge.

Action by Edward J. Drake and others against the Great Northern Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

*C. H. Winsor, W. F. McNaughton,* and *S. E. Wilson,* for appellant.

Failure of a firm to publish and file certificates disclosing the names and residences of the partners, as required by Civ. Code, § 1762, cannot be cured after action brought by the firm, where the effect of the omission has been properly raised by answer in the nature of a plea in abatement. ·Heegard v. Trust Co., 54 N. W. 656; Nerger v. Equitable Fire Ass'n., 107 N. W. 531-2; Byers v. Bownet, 64 Cal. 73; Sweeny v. Stamford, 67 Cal. 635; Phillips v. Goldtree, 13 Pac. 313; Choctaw Lumber Co. v. Gilmore, 68 Pac. 733.

The plaintiff cannot recover from the defendant damages for the result of his own default and negligence. St. Louis I. M. & S. Ry. Co. v. Law, 57 S. W. 258; Fort Worth & D. C. Ry Co. v. Daggett, 28 S. W. 525; Chapin v. Ry. C., 44 N. W. 820; Ry. Co v. Schmidt, 92 N. W. 162.

Plaintiff could not complain of damage resulting from his failure to feed and water his stock. He not having requested this opportunity. Hengstter v. Flint & M. R. Co., 84 N. W. 1067.

*Elmer R. Juckett* and *Chauncy Wood,* for respondents.

The failure of defendant to insert this plea in abatement in its original answer, such plea was waived by answering to the merits.

But even if defendant had pleaded plaintiff's non-compliance with sections 1762-1764 of the Civil Code properly, its failure to so plead it in its original answer waived its right to insist upon it in its answer to the amended complaints.

And the fact of plaintiff's compliance before the trial of the action, removed all disability as to prior or subsequent contracts or transactions. Heegaard v. Dakota Loan & Trust Co., 3 S. D. 569; Nerger v. Equitable Fire Association, 20 S. D. 419; Bovec v. DeJong, 22 S. D. 163, 116 N. W. 83; Proviso in Sec. 1764 Civil Code.

WHITING, J. This action comes before the court upon an appeal from the judgment of the lower court in favor of the plaintiffs, and from the order of said court refusing a new trial herein. Preliminary to the consideration of the appeal proper it is necessary to consider and dispose of a motion made by the appellant asking this court to strike from the record on appeal the additional abstract filed by respondents. This additional abstract sets out the fact that this case had been tried previous to the trial, from which the appeal was taken, which said former trial was had upon the original pleadings, it appearing that the trial from which this appeal originated was had on an amended complaint and answer, and the additional abstract sets forth the original pleadings, the same being omitted from the appellant's, abstract. Appellant contends that, the original pleadings having been succeeded by the amended pleadings, such original pleadings have

no place in the record on this appeal, but one of the questions raised by appellant relates to a plea in abatement first found in amended answer, and, as will hereinafter appear, in order for the proper consideration of the effect of such plea, it is necessary for this court to know the contents of the original pleadings, and it was therefore necessary for the same to be in the record herein. The motion to strike out the additional abstract is therefore denied.

It appears from the record that this action was tried first in November, 1903, on pleadings wherein the answer contained solely a plea in bar with no suggestion of any matter in abatement, and the complaint in no manner suggested any facts which might abate plaintiff's action. A new trial was granted by the court, and in March, 1904, the parties stipulated that plaintiffs might have until May 10, 1904, in which to serve an amended complaint, and defendant might have 60 days after service of such amended complaint in which to answer thereto. In accordance with such stipulation, plaintiffs served an amended complaint, but one in no manner changing the nature of the cause of action, and thereafter the defendant served its amended answer, which amended answer consisted of two parts—first, allegations in bar of plaintiffs' cause of action; and, second, allegations by way of plea in abatement. The allegations in bar in said amended answer were in substance exactly the same as the original answer, and the plea in abatement to the effect that the plaintiff partnership had never complied with section 1762 of the Civil Code of this state, requiring partnerships having fictitious names to file certificates, stating the names of parties and their places of residence, with clerk of court of the county where said partneship has its main place of business, and further requiring the publication of said certificate. While the respondents raise some question as to the sufficiency of the allegations in abatement, we are inclined to think that the plea was sufficient in form. It appears that defendant procured an order requiring the plaintiffs to reply to such plea, and plaintiffs did reply in September, 1904, setting forth facts showing that in August, 1904, plaintiffs fully complied with said section 1762, supra. There is nothing to show that defendant

ever petitioned to the court for leave to interpose the plea in abatement or that the court ever by order granted such leave; such matter not being in any manner referred to in the order requiring the reply.

Upon the trial of the cause it fully appeared that the name of plaintiff copartnership did not reveal the names of the copartners, and it was therefore such a partnership as was contemplated by said section 1762, supra; and it also fully appeared that at the time this action was commenced, and until August, 1904, the plaintiff partnership had not complied with said section, and on this record the appellant, after both sides had rested, moved the court to direct a verdict for the defendant, stating the following grounds: "First, that the undisputed testimony shows that the plaintiffs were a copartnership doing business under a fictitious name, and not showing the names of all the partners, and that they had not, prior to the commencement of this action, complied with sections 1762 and 1764 of the Civil Code of South Dakota." This motion was overruled, and an exception taken thereto, and such ruling assigned as error upon motion for new trial and upon this appeal. This court is therefore presented for the first time with the question of whether or not a person can by an amended answer without leave of court interpose a plea in abatement where no such plea was contained in the original answer, and where a trial had been had prior to the serving of such amended answer It is a well-established proposition that this question of filing certificate and publishing the same must be raised by answer, and is in every sense a plea in abatement. Nerger v. Fire Association, 20 S. D. 419, 107 N. W. 531. And it also seems to be well established that the omission to file and publish such certificate cannot be cured after action brought, where the effect of such omission had been properly raised by plea in abatement. Byers v. Bourret, 64 Cal. 73, 28 Pac. 61; Choctaw Lumber Co. v. Gilmore 11 Okl. 462, 68 Pac. 733; Wright v. Jett, 120 Ga. 995, 48 S. E. 345. It was a well-established rule under the common-law pleading that a plea in bar was a waiver of any right to plead in abatement, and while under the Code practice in most states, where a defendant is allowed to include in his answer all defenses

he may have, it is held that the defendant may join a plea in abatement with a plea in bar, yet it is universally holden that, where there is a plea in bar without a plea in abatement, there is by such pleading a waiver of any right to afterwards interpose a plea in abatement; some courts going so far as to hold that under no circumstances could the trial court afterwards allow a plea in abatement, while other courts hold that it is within the discretion of the trial court to relieve the defendant from its waiver upon good cause for such relief being shown. Conceding, therefore, that a court would have the right, upon proper application, to relieve a party from the effect of such waiver upon good cause shown, yet, under the statute of this state allowing amendments to pleadings in furtherance of justice, it could hardly be contended that an amendment such as we find in the case at bar would be in furtherance of justice. While there are certain pleas in abatement which should be looked on with favor, because, though interposed at a late hour, they may tend to the reaching of exact justice, yet it must be conceded we think that, in a case of this kind, where the question in abatement goes to the right of plaintiffs to bring suit because they have not complied with some statutory provision unknown to the common law, and the compliance with which in no manner affects the justice of the cause of action, the trial court, if application had been made asking leave to file such plea, would clearly have abused its discretion in allowing such a plea, especially where, as in this case, after issue joined on pleadings not raising this issue, the parties had gone to trial, and where the matters pleaded in abatement are matters concerning which there was record evidence as accessible to the defendant at the time of the original answer as at the time of the amended answer.

In Montague v. Brown, 104 N. C. 161, 10 S. E. 186, the plaintiff had brought action in a justice court against the defendant, and, under the statutes of that state, the plaintiff was required to prove his cause of action whether any answer was interposed or not. Defendant failed to interpose any answer and, there being judgment against defendant, appeal was had to the superior court, in which court the defendant moved to dismiss for want of jurisdiction, but did not interpose a plea in abatement. The motion to

dismiss was overruled, and judgment was rendered against the defendant, after which judgment the defendant sought leave to interpose a plea of other suit pending for the same cause of action. In considering this case the superior court held that, while it was unnecessary for defendant to answer in justice court in order to necessitate the proof on the part of plaintiff to sustain his claim, yet, if defendant desired to interpose new matter by way of defense such as his proposed plea in abatement, it would have been incumbent on him to plead the same, and, not having pleaded the same, it was a waiver, and in conclusion the court says: "After losing upon the merits, the defendant cannot expect to be allowed a new trial to set up a technical defense, as it must be conceded, if defendant owes the debt." In the case at bar the first trial resulted in a verdict for plaintiffs, and certainly we should hold, as did the North Carolina court, that, if defendant is indebted to plaintiffs, it would be wrong to consider, after one trial on the merits, a technical defense having no merit as between the parties, especially when defendant had once waived such defense,— if not indebted it could prove it in bar. In the case of Chamberlayne v. Nazro, 188 Mass. 454, 74 N. E. 674, the defendant answered on the merits, and the case was heard on the merits by an auditor. The original answer was a general denial and a plea of payment. Some 20 months later an amended answer was filed by consent, which again pleaded the general denial and plea of payment, adding thereto an averment in the nature of a plea in abatement. Thereafter, on the trial in the superior court, at the close of the evidence, the defendant made request for rulings which raised the question of defendant's rights under such plea in abatement, and the court said: "It was then too late to raise such a question. In the first place, the answer on the merits was a waiver of the right to set up a matter in abatement. The reference to the auditor without objection by the defendant and the hearing before him on the merits were an even more pronounced waiver of the question as to the bringing of the suit. This hearing was followed by a trial in the superior court, in which, at the close of the evidence, these requests were first made. If the defendant desired to have the case disposed of on the ground that it was

brought before the court improperly and without authority, she should have raised the question at the outset." In the case of Wolf v. Willingham, 107 S. W. 60, the defendant first interposed two original answers, the first one raising an issue of jurisdiction, pleading a general denial, and a plea of not guilty. The question of jurisdiction was ruled in favor of the defendant, but upon appeal it was reversed, and thereafter the second original answer was interposed, again raising a question of jurisdiction. Still later an amended answer, being a renewal of the second answer above together with a plea in abatement, was filed. On appeal the question was raised as to whether defendant had waived the right to plead in abatement because of her other answers, and the appellate court held that she had. The court said: "Until she filed her amended original answer on September 3, 1906, appellee had not in any manner presented the question of her personal privilege to be sued in another county, yet one year prior to that time she answered to the merits by filing a general denial and plea of not guilty. * * * Nor is it material that the original answer to the merits was afterwards superseded and abandoned by filing an amended answer that did not contain any answer to the merits. When a defendant has filed an answer to the merits, and thereby cut off his right to file a plea in abatement, such right cannot be regained by him by withdrawing or abandoning his answer to the merits." It is therefore our opinion that defendant in the case at bar lost its right to interpose its plea in abatement when it served its original answer, and that plaintiffs' acceptance of his amended answer and reply thereto under the order of the court did in no manner restore to the defendant the right which it had waived, and that, therefore, the trial court was right in refusing to direct a verdict based on such a plea in abatement.

Coming now to the merits of this case, we find it to be one wherein the plaintiffs shipped certain horses from Minnesota Transfer, in the state of Minnesota to Neche, N. D., which horses were unloaded en route at Grand Forks. Plaintiffs claim certain damages owing to alleged delay in the running of the train between Minnesota Transfer and Grand Forks and keeping the horses on the cars without feed and water during said time;

further, certain damages for alleged failure of defendant to pro-
vide suitable stockyards for the horses while unloaded at Grand
Forks; and, further, certain damages for the alleged negligence of
defendant in reloading said horses at Grand Forks, and keeping
them without food or water in an open stock car for a long period
of time before continuing shipment; and, further, damages for loss
of time and medical expenses. Certain rulings of the court were ex-
cepted to during the course of the trial, but no assignment is saved
as to any such ruling except the ruling denying defendant's motion,
made at the close of the testimony, asking for a directed verdict upon
the following grounds: "That the undisputed testimony shows that
the horses of the plaintiffs were delivered to and transported by
the defendant under a written contract, which governs the actions
of the parties to this action, and that within the issues of the
pleadings the defendant company has not been shown to be guilty
of any negligence which under said contract would make them
liable, and that the undisputed testimony shows that whatever
damages the plaintiffs have suffered, within the allegations of their
complaint, were caused solely or in part by their own carelessness,
or by that of their representative in charge of said horses." No
good purpose could be subserved by a detailed statement of the
evidence in this case, but it is enough, for the purpose of this
point, to state that there certainly was some evidence on the part
of the plaintiffs, which, if believed, would warrant the jury in
finding for the plaintiffs on one or more of the different claims
herein referred to, and therefore there was no error in the court's
denying such motion.

No exception was taken to the instructions given by the court,
but the defendant requested the court to give five other instruc-
tions, all of which were refused, and the defendant assigns as an
error each of such refusals, but in its brief it only urges one
refusal, being the refusal of the court to give an instruction in-
volving the question of the contributory negligence of the plain-
tiffs. Inasmuch as there had been no issue raised in the pleadings
as to contributory negligence, it may be questionable whether
under the circumstances defendant was entitled to such an in-
struction. It is admitted by defendant that the court at one point

in its instructions fully and fairly instructed on the question of contributory neglegence; his complaint being that within a few sentences thereafter the court in summarizing its instructions omiteed reference to such question of contributory negligence, but inasmuch as defendant in no manner excepted to such instructions which omitted reference to contributory negligence, we cannot see wherein he would have been benefited by the interpolation into such instructions of the instruction asked for, when he admits that it was properly given by the court in other words, at one place in such instructions.

The only other assignment is that wherein the defendant specifies the particular wherein it claims the evidence insufficient to justify the verdict. There being no question saved as to the admission of any of the testimony, and there being no exception to the instructions of the court, and the law announced in such instructions being the law of the case regardless of whether the court properly construed the contract existing between the parties hereto, the only matter for consideration is the question of whether or not the evidence in this case, under the law as laid down by· the court, sustained the verdict. Appellant's specifications of the insufficiency of the evidence to justify the verdict are as follows: "(1) There is no evidence in the record which discloses, or tends to disclose, any failure of duty on the part of the defendant that it owed the plaintiff in the shipment of these horses under the contract entered into between plaintiff and defendant relative to said shipment. (2) It does not appear in evidence that the defendant did not fulfill its part of the contract of shipment between the plaintiff and the defendant. (3) No evidence was offered which shows, or tends to show, that the defendant was guilty of any specific acts of negligence relative to the shipment of horses. (4) There is no evidence in the record of gross negligence on the part of the defendant relative to the shipment of these horses. (5) That the evidence discloses that the plaintiff himself did not perform his part of the agreement relative to the shipment of horses under the contract in evidence. (6) That the evidence discloses that the plaintiff was himself guilty of negligence which contributed to the injury to the horses and for each specific item of negli-

gence specified in his complaint.   (7) That the evidence fails ·to disclose the cause leading up to the damages claimed to have been sustained before the horses arrived at Grand Forks, and no negligent acts. and no acts of gross negligence are shown against the defendant therefor.   (8) That there is no evidence of negligence, or of gross negligence, on the part of the defendant shown causing the damages claimed at Grand Forks after the arrival of the horses and before they were loaded upon the cars.   (9) That there is no evidence of negligence, or of gross negligence, on the part of the defendant causing the damage to the horses claimed after they were loaded at Grand Forks and before they arrived at Neche."

The reading of the first four specifications shows that they are insufficient, providing there is any evidence whatsoever showing actionable negligence on the part of the defendant.   Referring to ·simply one branch of this case, we would state that there was evidence, which, if believed by the jury, would show that the time of shipment of this stock was in the month of March·; that on its arrival at Grand Forks the stock was in a bad condition physically, owing to length of time they had been without food and water; that while at Grand Forks there was a bad blizzard of some· two days' duration, during the greater part of which time this stock was roaming over the prairies without food or shelter, resulting in the stock being in an extremely weakened condition; that the stock was recovered and placed by the defendant company in an open yard; that the train going to Neche was to leave at 5 o'clock a. m., but, owing to the stormy weather, was usually late in leaving; that the railroad company, without any notice to the plaintiff, loaded this stock while in its weakened condition into an open stock car at about 7 o'clock in the evening before the morning on which it intended to ship same, and allowed said car of stock to stand in an exposed place during a cold wintry night and until 10 o'clock the next morning, resulting in considerable loss in value to said stock; that at the same time in the case of another bunch of horses belonging to another party, shipped also from Minnesota Transfer to Grand Forks, and which was shipped out from Grand Forks on the same train, the defendant company, in-

stead of loading the same at time they loaded the plaintiff's stock, waited until the next morning and notified the owner of said stock, who loaded the same at 8 o'clock in the morning. The court in relation to this loading of the stock and allowing it to remain in the car instructed the jury that if, by the exercise of slight care on defendant's part, defendant could have taken care of the property loaded at or near the time of its departure, defendant would be liable to pay for any damage plaintiff received by reason of such loading and allowing the stock to so remain during the night. With the jury believing such evidence, and it was almost entirely uncontradicted, then, under the instructions of the court, which instructions were not complained of, it is clearly evident that the first four assignments have nothing to stand on.

The fifth assignment referred to a matter, which, if true, is absolutely immaterial. It must be readily seen that the omission of plaintiffs to perform their duties under such contract, if there was any such omission, would in no manner affect defendant's liability, unless such omission was one of the causes of the damage, and there is no allegation in such specification to that effect.

The sixth specification goes further, stating that plaintiffs, through their agent, were guilty of negligence, which negligence contributed to the injury complained of, but it will be noticed that this specification does not in any manner point out any act or acts of negligence on the part of plaintiffs' agent, and that ,therefore, such specification is wholly insufficient under the well-established rule requiring the specifications to point out the particular matter complained of, and it must therefore be presumed that 'the trial court on the motion for new trial disregarded such specification.

As regards the seventh specification, we would say that the evidence showed that these horses were on the cars some 38 hours from the time they left Minnesota Transfer until they were placed where they could be unloaded at Grand Forks; that there was considerable delay at the stations en route; that the train upon which they were shipped was what is known as a way freight, while plaintiffs' evidence was to the effect that the stock was to have been shipped on a through train. The evidence would

further tend to show that almost immediately after the stock reached Grand Forks one horse was found to be very sick, and died some two or three days thereafter from a diseased condition, caused from being without food and water for such a long period, and that the remainder of the stock was in bad condition on arrival at Grand Forks. The court in its instructions instructed that it was the right and also the duty of the defendant company to unload such stock for food and water at the end of 28 hours. There was therefore ample evidence, which, if believed, taken in connection with the instruction of the court, did warrant the jury in finding that the defendant was guilty of gross negligence in that part of the shipment.

As regards the eighth assignment, the evidence shows that defendant's stockyards at Grand Forks were in a very bad and unsafe condition, and there was evidence tending to show that the plaintiffs complained of such condition, and that plaintiffs fixed the yard in as good condition as possible with the material at hand; that the stock broke out of such yard and were running loose during the blizzard, above referred to, receiving serious damages therefrom. It is true there is evidence tending to show that defendant was ready to provide a safe inclosure at a livery barn in said city, but there is dispute in the evidence as to the conditions under which such yard would be provided. The court instructed that defendant might provide a yard other than the stockyard, if reasonably convenient. It was, however, the duty of the railroad company to provide such yard without any expense to the shipper; the shipper having the right himself to tend to the feeding and watering. Furthermore, there can be no doubt but that under the law, if defendant company desired to furnish a yard away from its tracks, it must assume the duty and liability of any loss or damage to the stock in the transfer of the same from place of unloading to such yards, and, such being the law, there was ample evidence to warrant the jury in finding the defendant liable for the damages caused by said horses wandering on the prairie during said blizzard.

What we have already said in relation to the first four assignments fully covers the ninth assignment, as the evidence referred

to in discussing such four assignments pertains to matter referred to in the ninth assignment.

Both sides have cited many authorities showing the holdings of courts in relation to the duties of the contracting parties under shipping contracts similar to the one between the parties to this action, but, as we already said, it is not the law, which should have been given, that controls in this case, but the law as given, except in so far as there may have been matters not covered by the instructions. We do not wish by the above statement to be understood as inferring that there was any error in the instructions as given, because in our opinion the instructions are very full and complete. If the court erred on either side, it was in favor of the defense.

Finding no error in the records, the judgment of the trial court and the order denying a new trial are affirmed.