Argued and submitted July 9, reversed and remanded October 1, 1985

## MINNESOTA BOND LTD.,
dba All-Ways Hair & Care Port,
*Respondent on review,*

*v.*

## ST. PAUL MERCURY INSURANCE COMPANY,
*Petitioner on review.*

(CC 31205; CA A27859; SC S31609)

706 P2d 942

Jeffrey A. Bowersox, Bend, argued the cause for

respondent on review. With him on the response to the petition for review was Craig C. Coyner, Bend.

Before Peterson, Chief Justice, and Linde, Campbell, Roberts, Carson and Jones, Justices.

JONES, J.

## JONES, J.

In this case defendant, St. Paul Mercury Insurance Company, was an insurer of plaintiff corporation, Minnesota Bond Ltd., under a fire insurance policy which was in effect in January 1981 when one of the businesses held by the plaintiff corporation, All-Ways Hair & Care Port (All-Ways), was damaged by fire. Plaintiff corporation brought this action when defendant denied liability and refused to make payment on the policy because the fire was intentionally set by a 50 percent shareholder. The circuit court entered judgment in favor of plaintiff. The Court of Appeals affirmed that judgment. *Minnesota Bond v. St. Paul Mercury Ins. Co.,* 72 Or App 187, 695 P2d 579 (1985).

We allowed review because this case presented an issue of first impression in Oregon: Whether under the common law a corporation can be barred from recovery of insurance benefits when a 50 percent shareholder-officer intentionally destroys corporate property by fire. However, we do not reach this issue because we find that the specific provisions of the insurance policy involved in this case exclude recovery by the insured plaintiff corporation.

Minnesota Bond Ltd., an Oregon corporation, was formed in 1979 by Jean Wallace and her daughter, Lynda DiGeorge. Wallace and DiGeorge each owned 50 percent of the shares of the corporation. Wallace was president and DiGeorge was secretary/treasurer. Both were on the board of directors. Plaintiff corporation was formed for tax purposes and to operate four small businesses which included All-Ways, a beauty salon, and Girl Friday, a secretarial and switchboard service. Wallace managed All-Ways and DiGeorge made all the day-to-day decisions for Girl Friday. DiGeorge did the bookkeeping for both businesses.

The trial court found that on January 8, 1981, DiGeorge intentionally set fire to All-Ways. DiGeorge started the fire to defraud defendant insurance company into paying $1,000, which she owed her mother for a personal loan. She represented that she had left $1,000 cash in an envelope in the building the day of the fire, but later admitted that this was not true.[1]

---

[1] In a separate proceeding, DiGeorge entered a no-contest plea to the charge of reckless burning arising from the fire.

The trial court found no evidence that DiGeorge acted for the benefit of the plaintiff corporation or her mother and no evidence that any benefit would accrue to DiGeorge if recovery was obtained under the policy. The trial court further found no evidence that plaintiff corporation, through Wallace, authorized or ratified DiGeorge's conduct.

Defendant pled as an affirmative defense that "the fire for which plaintiff is making claim was the result of the intentional act of Ms. Lynda DiGeorge and plaintiff's claim is therefore barred." The entire policy was placed in evidence by the plaintiff. The defendant asserted that there was no coverage under the policy because of exclusion No. 4 contained in the policy:

"Section I does not apply to loss or damage:

\* \* \* \* \*

4. Caused by unexplained or mysterious disappearance of property, or shortage of property disclosed on taking inventory; or caused by any willful or dishonest act or omission of the Insured or any associate, employee or agent of any insured, while working or otherwise; or voluntary parting with title or possession of any property by the Insured or others to whom the property may be entrusted if induced to do so by any fraudulent scheme, trick device or false pretense;"

The trial court ruled that although the specific exclusion was not pled, the defendant could assert it. The plaintiff did not challenge the pleading ruling, but asserted that the exclusion did not apply.

The trial court agreed with the plaintiff and ruled on the exclusion as follows:

"\* \* \* The context of a 'willful or dishonest act' is described by the remainder of the language in the exclusion, which speaks to unexplained or mysterious disappearance of property or the voluntary parting with titled possession of property as a result of a fraudulent scheme. This Court concludes that this exclusion is inapplicable to the factual situation in the case at bar and the motion for reconsideration is denied."

The Court of Appeals, in a footnote, held that defendant's assertion that the loss was excluded under the policy had no merit. 72 Or App at 189 n 1.

■     Our examination of the policy leads us to the opposite conclusion of the trial court. Section I of this business property all-risk coverage applies to loss or damage to property by fire. Exclusion 4 is not restricted to losses by unexplained or mysterious disappearance of property. The words "or caused by any willful or dishonest act or omission of the Insured or any associate, employee or agent of any insured, while working or otherwise," form a completely independent clause. There is no question that the act of arson was the willful and dishonest act by DiGeorge, who was an employee of the insured corporation.

■     The plaintiff contends that this exclusion is inapplicable because under a completely separate section of the policy the company agreed to pay for employee dishonesty and that the act of arson by DiGeorge was a dishonest act causing loss of property. That insurance clause reads:

"THE COMPANY AGREES TO PAY:

A.   Employee Dishonesty.

For loss of money, securities and other property by any fraudulent or dishonest act committed by any of the employees, whether acting alone or in collusion with others;"

This clause clearly refers to theft or embezzlement by employees of money, securities and other such property and has no application to property damage caused by the dishonest act of arson.

The exclusion in question is found in Section I of the insurance contract, denominated "Buildings and Specified Personal Property." The employee theft provisions, however, are found in Section IIA of the contract, denominated "Crime Coverage," a section which is not involved in this fire loss. In Section IIA, a fidelity-type provision allows recovery for "loss of money, securities and other property by any fraudulent or dishonest act committed by any of the employees," but excludes such coverage when the loss is "due to any fraudulent, dishonest or criminal act by any insured or a partner therein." The clause in Section IIA regarding employee theft is entirely different from the "willful or dishonest act or omission of the Insured or any associate, employee or agent of any Insured" exclusion in the property damage section (Section I) of the insurance contract.

Although it may have been unwise for this insured to purchase a policy with such a far-reaching exclusion as contained in exclusion No. 4, nevertheless that decision was made by the plaintiff corporation when it chose to insure its property under this policy. The exclusion is clear and unambiguous and fully applicable to this loss. There is no coverage for this loss under the policy.

The Court of Appeals is reversed and the case is remanded to the trial court for entry of judgment in favor of defendant.