TRADERS & GENERAL INSURANCE COMPANY, Plaintiff,

v.

Heather FREEMAN, Mike Freeman, and Mary Anne Clow, Defendants.

No. CV 98–1263–HU.

United States District Court, D. Oregon.

Jan. 20, 2000.

Ronald J. Clark, Portland, OR, for Plaintiff.

Richard Maizels, Portland, OR, for Defendants Heather Freeman and Mike Freeman.

Forrest N. Rieke, Paul G. Ellis, Rieke & Savage, P.C., Portland, OR., for Defendant Mary Anne Clow.

## ORDER

PANNER, District Judge.

Magistrate Judge Dennis James Hubel filed his Findings and Recommendation on December 9, 1999. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b). When either party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir. 1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).

Defendant Mary Anne Clow has filed timely objections. I have, therefore, given the file of this case a *de novo* review. I ADOPT Magistrate Judge Hubel's Findings and Recommendation. Plaintiff's motion for summary judgment (# 46) is granted. Defendant Clow's motion for summary judgment (# 50) is denied.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

HUBEL, United States Magistrate Judge:

This declaratory judgment action involves an insurance coverage dispute between plaintiff Traders & General Insurance Company and defendants Heather Freeman, Mike Freeman, and Mary Anne Clow. Plaintiff and Clow each move for summary judgment on a discrete issue—whether the intentional destruction of property by one named insured precludes coverage for another named and "innocent" insured under the terms of the insurance contract. The Freemans are not involved in these motions. I recommend that plaintiff's motion be granted and that Clow's motion be denied.

## BACKGROUND

For purposes of this motion only, plaintiff and defendant Clow have stipulated to the following facts: Clow is the sole owner of real and personal property damaged or destroyed by fire on June 25, 1998. Heather Freeman, Clow's daughter-in-law, intentionally set the fire. There was a property insurance policy in effect between plaintiff and all defendants at the time of the fire. Clow has made a claim against plaintiff for insurance benefits for the damage to the real and personal property caused by the fire. Clow had no knowledge of, responsibility for, or culpability

for the fire. Each of the defendants is a "named insured" on the insurance policy.

In addition to the stipulated facts, the following facts are undisputed: plaintiff denied coverage for Clow's losses based on two provisions in the policy: (1) the concealment and fraud condition; and (2) the intentional loss exclusion. In the Complaint, plaintiff contends that Heather Freeman breached the insurance contract by starting the fire involved in the insurance claim and by misrepresenting or concealing material facts relating to the claim. Plaintiff also alleges that Mike Freeman breached the insurance contract by misrepresenting material facts about his history with Heather Freeman.

Plaintiff filed this declaratory judgment action seeking a judicial declaration of "no coverage" due to the breach or breaches of the insurance contract by one or more of the insureds. At oral argument, plaintiff's counsel indicated that plaintiff no longer relies on the concealment and fraud condition in denying coverage, but relies solely on the intentional loss exclusion.

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.' " *Intel Corp. v. Hartford Acc. &*

*Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Id.; In re Agricultural Research and Tech. Group,* 916 F.2d 528, 534 (9th Cir.1990); *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987).

## DISCUSSION

Plaintiff argues that the insurance contract unambiguously supports a denial of coverage. Clow argues that the contract is ambiguous and alternatively, that if read according to plaintiff's construction, the terms violate the Oregon Insurance Code and must be conformed to the Oregon Insurance Code to permit Clow's recovery.

I. Oregon Insurance Contract Interpretation Standards

The "question of [insurance] policy interpretation is one of law, . . ., and [the court's] task is to determine the intent of the parties." *Groshong v. Mutual of En-*

*umclaw Ins. Co.,* 329 Or. 303, 307, 985 P.2d 1284, 1287 (1999); *see also Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or.,* 313 Or. 464, 469, 836 P.2d 703, 706 (1992) ("the primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties.") (internal quotation omitted). The court determines the parties' intent "from the terms and conditions of the policy." *Groshong,* 329 Or. at 307, 985 P.2d at 1287.

■ A term is ambiguous if

two or more plausible interpretations of that term withstand scrutiny, i.e., [it] continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole.

*Hoffman Construction,* 313 Or. at 470, 836 P.2d at 706.

■ When the policy does not define the terms at issue, the court "resort[s] to various aids of interpretation to discern the parties' intended meaning." *Groshong,* 329 Or. at 307–08, 985 P.2d at 1287. The court first examines the plain meaning of the term at issue. *Id.* at 308, 985 P.2d at 1287. If the meaning of the term or phrase at issue "is not, on its face, plain, [the court] proceed[s] to [its] second aid to interpretation[-] . . . examin[ing] the phrase in light of the particular context in which . . . [it] is used in the policy and the broader context of the policy as a whole." *Id.* at 312, 985 P.2d at 1289 (internal quotation omitted).

■ If, after application of such analysis, the court determines that the term is ambiguous, the term is to be construed against the insurer, the party which drafted the policy. *Id.* As the *Hoffman* court explained:

[W]hen two or more competing, plausible interpretations prove to be reasonable after all other methods for resolving the dispute over the meaning of

particular words fail, then the rule of interpretation against the drafter of the language becomes applicable, because the ambiguity cannot be permitted to survive. It must be resolved.

*Id.* at 470–71, 836 P.2d at 706–07.

■ On the other hand, where the contract unambiguously expresses the intent to provide coverage or to not provide coverage, the contract language is controlling. *See Allstate Ins. Co. v. State Farm Mutual Auto. Ins. Co.,* 67 Or.App. 623, 627, 679 P.2d 879, 881 (1984) (where contract language is unambiguous, courts will "apply those terms and will not create coverage where none was intended by the contract.").

## II. Relevant Portions of the Insurance Contract

The following portions of the insurance contract are relevant to this dispute:

### FARM PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION H.—DEFINITIONS.

\* \* \* \* \* \*

### C. EXCLUSIONS

The following Exclusions apply when any or all of the Covered Causes of Loss, BASIC, BROAD, OR SPECIAL, are specified in the Declarations:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is

excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\*　　\*　　\*　　\*　　\*　　\*

### 4. Intentional Loss

We will not pay for loss or damage arising out of any act committed:

By or at the direction of any "insured"; and

With the intent to cause a loss.

\*　　\*　　\*　　\*　　\*　　\*

## GENERAL CONDITIONS

### 1. Concealment, Misrepresentation or Fraud[1]

This coverage form is void in any case of fraud by you as it relates to this Coverage Form at any time. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form

**b.** The Covered Property

**c.** Your interest in the Covered Property; or

**d.** A claim under this Coverage Form.

### 2. Control of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

\*　　\*　　\*　　\*　　\*　　\*

## H. DEFINITIONS

The following words and phrases have a special meaning throughout this Coverage Form:

\*　　\*　　\*　　\*　　\*　　\*

**4. "Insured"** means you and, if you are an individual, the following members of your household:

**a.** Your relatives;

**b.** Any other person under the age of 21 who is in the care of any person specified above.

Ex. 1 to Pltf's Concise Stmt of Mat. Facts at pp. 1, 26, 31, 32.

### III. Discussion

#### A. Contract–Based Analysis Generally

Current cases from around the country discussing the issue of whether an "innocent coinsured" may recover for a loss intentionally caused by another named insured, have used a contract-based approach, relying on the contract language itself to determine the parties' intent on a case by case basis. *See, e.g., McCauley Enterprises v. New Hampshire Ins. Co.,* 716 F.Supp. 718, 720 (D.Conn.1989) (explaining that jurisdictions previously following the general rule that "an innocent co-insured, whether partner ... or spouse ... cannot recover on a fire insurance policy where the property wilfully was destroyed by the other co-insured," did so based on either the relationship of the co-insureds, that is spousal, business, or other, or on the underlying property interest, that is, tenancy by the entirety, joint tenancy, or other, and noting that courts have moved away from that analysis and have focused instead on the intent of the parties as expressed in the insurance contract); *see also St. Paul Fire & Marine Ins. v. Molloy,* 291 Md. 139, 148–50, 433 A.2d 1135, 1139–41 (1981) (discussing cases from several jurisdictions which analyzed issue based on the relationship of the insureds or the underlying property interest and rejecting such analyses in favor of determining parties' intent from the insurance contract).

#### B. Contract–Based Analysis in Oregon

■ A contract-based analysis comports with Oregon law which, in insurance contract disputes, focuses on determining the intent of the parties from the text and

---

**1.** Even though plaintiff no longer denies coverage under this condition, it remains rele-  vant as explained below.

context of the insurance contract. Although there are no Oregon cases precisely on point, a 1985 case suggests that the Oregon Supreme Court would use the contract-based analysis to resolve the present dispute.

In *Minnesota Bond Ltd. v. St. Paul Mercury Ins. Co.*, 300 Or. 85, 706 P.2d 942 (1985), the plaintiff corporation, which operated four separate businesses, was owned by two persons who both were on the board of directors. One of the two owners of the corporation provided bookkeeping services for at least two of the businesses and made all of the day to day decisions for one of the businesses, a beauty salon. That owner intentionally set fire to the beauty salon and plaintiff corporation sought recovery for the losses from defendant, its insurer.

The Oregon Supreme Court relied on the language of the insurance contract to resolve the dispute. The relevant contract language was an exclusion which denied coverage for "any willful or dishonest act or omission of the Insured or any associate, employee, or agent of any insured . . ." *Id.* at 88, 706 P.2d at 943. The court found that the exclusion applied because "the act of arson was the willful and dishonest act by [the corporation's co-owner], who was an employee of the insured corporation." *Id.* at 89, 706 P.2d 942; 706 P.2d at 944. The court rejected the plaintiff's argument that a provision allowing coverage for the loss of "money, securities and other property by any fraudulent or dishonest act committed by any of the employees," controlled because, the court concluded, that provision did not apply to property damage caused by the dishonest act of arson. *Id.*

Finally, the court noted that the plaintiff could have achieved a different result by purchasing a different policy. The court stated: "Although it may have been unwise for this insured to purchase a policy with such a far-reaching exclusion as contained in exclusion No. 4, nevertheless, that decision was made by the plaintiff

corporation when it chose to insure its property under this policy." *Id.* at 90, 706 P.2d at 944.

*Minnesota Bond* shows that the Oregon Supreme Court would likely approach the instant case with the same contract-based analysis it used in *Minnesota Bond.* I adopt that method of analysis to resolve the disputed issue presented in these motions.

C. Application of Contract–Based Analysis

Plaintiff argues that under a contract-based analysis, the specific insurance policy language at issue here is clear and unambiguous. By its terms, plaintiff argues, the exclusion in the insurance policy applies to this loss based on the stipulated facts and provides that coverage does not exist.

Courts considering the issue using a contract-based analysis have consistently held that the use of the term "any insured" is clear and unambiguous and precludes an innocent coinsured from recovery. *See, e.g., Amick v. State Farm Fire & Casualty Co.*, 862 F.2d 704, 706 (8th Cir.1988) (insurance policy denying recovery to "you and any other insured" in the event that "you or any other insured" commit fraud or misrepresent material facts, unambiguously denied recovery to innocent coinsured grandmother when house intentionally destroyed by coinsured grandson); *Sales v. State Farm Fire and Casualty Co.*, 849 F.2d 1383, 1385 (11th Cir.1988) ("unlike the phrase 'the insured,' the phrase 'any insured' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent coinsured."); *Spezialetti v. Pacific Employers Ins. Co.*, 759 F.2d 1139, 1141–42 (3d Cir.1985) (policy referring to "any insured" rather than "the insured" creates no ambiguity regarding coverage of joint or several interests and thus, innocent coinsured spouse could not recover); *K & W Builders, Inc. v. Merchants and*

*Business Mens's Mutual Ins. Co.,* 255 Va. 5, 10–13, 495 S.E.2d 473, 476–78 (1998) (policy which voided coverage for any fraud committed by "you or any other insured" precluded recovery by innocent coinsured); *cf. Michigan Millers Mutual Ins. Corp. v. Benfield,* 140 F.3d 915, 926–27 (11th Cir.1998) (court noted in contrast to "any insured" which unambiguously expresses a contractual intent to create joint obligations, a reasonable person could not determine, from reading the contract at issue, whether "an insured" established joint or several liability; court rejected argument that policy's intentional loss exclusion language unambiguously provided for joint coverage rather than several coverage when policy defined intentional loss as any loss arising out of any act committed "by or at the direction of an insured" with the intent to cause a loss); *but see Fireman's Fund Ins. Co. v. Dean,* 212 Ga.App. 262, 264, 441 S.E.2d 436, 438 (1994) (reading "an insured" to be the equivalent of "any insured").

As noted above, "Insured" is defined in the policy as follows:

> **"Insured"** means you and, if you are an individual, the following members of your household:
>
> **a.** Your relatives;
>
> **b.** Any other person under the age of 21 who is in the care of any person specified above.

Ex. 1 to Pltf's Concise Stmt of Mat. Facts at p. 32.

Additionally, the policy defines "You" as follows:

> Throughout this policy the word[ ] "you" refer[s] to the Named Insured shown in the Declarations.

*Id.* at p. 1.

As indicated above, the relevant contract language in the intentional loss exclusion denies coverage for any act committed by "any insured" with the intent to cause a loss. Here, Clow and the Freemans were all named insureds on the policy and are also therefore, "insureds."

The use of the word "any" to modify "insured" demonstrates joint liability for all named insureds. Under the prevailing law in most jurisdictions as cited above, and using the insurance contract interpretation standards developed by the Oregon courts, the language unambiguously expresses a contractual intent to create joint obligations.

■ Clow does not dispute that cases from around the country generally support a conclusion that the use of the phrase "any insured" demonstrates an unambiguous intent to create joint liability. Clow argues, however, that the "Control of Property" condition, which appears immediately after the concealment and fraud condition in the General Conditions section, creates an ambiguity because it allows recovery for "[a]ny act or neglect of any person other than you beyond your direction or control[.]" Ex. 1 to Pltf's Concise Stmt of Mat. Facts at p. 31. Clow argues that this condition gives rise to a reasonable inference that "you," defined as a "Named Insured" in the singular and not the plural, *see* Ex. 1 to Pltf's Concise Stmt of Mat. Facts at p. 1, can still recover, even if the "act or neglect of any person other than you beyond your direction or control" is committed by another named insured. Clow argues that given this "Control of Property" condition, the policy provides coverage to her because "[a]ny act … of [Heather Freeman] … beyond [Mary Ann Clow's] direction and control will not affect this insurance." Thus, Clow argues, there is a true ambiguity because of the conflicting "Control of Property" condition allowing coverage and the other provisions denying or excluding coverage.

Clow argues that "you" does not include other named insureds not only because it is defined in the singular, but also because in other places in the policy, notably the concealment and fraud condition immediately preceding the control of property condition, the policy uses both "you" and "you or any insured." From this, Clow

contends, it can be inferred that "you" does not include other named insureds or there would be no reason to separately state "you or any insured." As plaintiff explained at oral argument, however, while "you" is defined as the named insured, "insured" is defined to include more than named insureds. Ex. 1 to Pltf's Concise Stmt of Mat. Facts at p. 32 (defining "insured" to include relatives who are members of "your" household and any other person under the age of 21 who is in the care of any person previously specified). Thus, the choice of language by the drafters in the concealment, misrepresentation, and fraud general condition is obviously meant to apply to named insureds ("you" as defined in the policy), and to include the additional "insureds" as defined in the policy. On the other hand, the control of property condition is clearly intended to preclude the act or neglect of only those outside of the Named Insureds identified in the Declarations, from affecting the insurance. I find no ambiguity here.

The Virginia Supreme Court's decision in *K & W Builders* is on point although it goes further than I need to go to reject Clow's argument. There, the innocent coinsured plaintiff relied on the exact same "Control of Property" language as appears in the policy at issue here, to argue that it was entitled to coverage, despite the presence of an exclusion for fraudulent acts committed by "you or any other insured," because, the plaintiff argued, under the control of property condition, if a coinsured acts improperly, outside the innocent insured's direction or control, such misconduct does not affect the insurance with respect to the innocent insured. *K & W Builders*, 255 Va. at 10, 495 S.E.2d at 476. The court rejected that argument. The court had already noted that the word "you" was defined, just as it is in the instant case, as the "Named Insured." *Id.* at 8; 495 S.E.2d at 475. The court then adopted the plaintiff's reasoning that the word "you" included the two named insureds and the plaintiff, even though the plaintiff was an additional insured and not

a named insured. *Id.* at 10; 495 S.E.2d at 476. Here, there is no issue that all defendants are named insureds.

The court engaged in the following analysis:

> to reach the conclusion K & W argues for, one must read the word "you," as used in the Control of Property provision, as though K & W were the only insured, resulting in this reading:

> Any act or neglect of any person other than K & W beyond K & W's direction or control will not affect this insurance.

> Under this version, since the act or neglect in question was attributed to [first and second named insureds], a person or entity other than K & W beyond K & W's direction or control, the insurance provided by Merchants' policy would not be affected. However, this is an impermissible reading because it ignores the indisputable fact that there are other insureds under the policy.

> With "you" interpreted as including K & W, the only proper reading of the Control of Property provision is as follows:

> Any act or neglect of any person other than [first named insured], [second named insured], or K & W beyond [first named insured], [second named insured], or K & W's direction or control will not affect this insurance.

> Under this reading, since the act or neglect in question was not attributed to a person or entity other than [first named insured], [second named insured], or K & W, the Control of Property provision simply does not apply, and, contrary to K & W's contention, there is no ambiguity concerning "the question of whether the fraud clause or dishonest acts exclusion negate[s] coverage for all insureds based upon the acts of any coinsured."

*Id.* at 11; 495 S.E.2d at 476–77.

For the reasons explained by the *K & W Builders* court, I reject Clow's argument that the control of property condition creates an ambiguity. Thus, I conclude that

the policy unambiguously creates joint liability among all named insureds and that the policy as drafted denies recovery to Clow, even as an innocent coinsured.

**D.   Violation of Oregon Insurance Code**

■ Clow argues that if I construe the policy in plaintiff's favor, it conflicts with the Oregon Insurance Code's ("the Code"), mandated minimum level of protection and thus, cannot be enforced as written. As explained below, I agree with Clow that the concealment and fraud condition conflicts with the Code, but I agree with plaintiff that the intentional act exclusion should be sustained as drafted.

The Code is "for the protection of the insurance-buying public[ ]" and "is to be liberally construed." Oregon Revised Statute (ORS) 731.008, ORS 731.016. Fire insurance policies in Oregon are governed by ORS 742.200—742.254 which provides, in pertinent part, that

A fire insurance policy shall contain the following provisions:

(1) ... this entire policy shall be void if, whether before or after a loss, *the insured* has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

ORS 742.208 (emphasis added).

Clow argues that because the concealment and fraud condition in the instant policy uses the phrase "any insured" rather than "the insured" as mandated by the Code, and because "the insured" has been interpreted, as noted above, to establish the intent of several liability while "any insured" establishes the intent of joint liability, the instant policy fails to offer the minimum level of protection required by Oregon law. As such, Clow argues, the policy must be reformed to conform to Oregon law and allow her to recover.

Several cases support Clow's argument. *See, e.g., Ponder v. Allstate Ins. Co.,* 729 F.Supp. 60 (E.D.Mich.1990) (concealment and fraud condition using phrase "any insured" conflicted with Michigan statutory standard insurance policy mandating a concealment/fraud clause reading "the policy shall be void if ... the insured has ... " and would be not be permitted to stand); *Watson v. United Servs. Auto. Ass'n,* 566 N.W.2d 683 (Minn.1997) (concealment and fraud condition and intentional act exclusion using phrase "an insured," were at odds with Minnesota statutory standard fire insurance policy using "the insured" and had to be reformed to comply with the statutory standard policy); *Borman v. State Farm Fire & Casualty Co.,* 446 Mich. 482, 521 N.W.2d 266 (1994) (concealment and fraud condition and intentional loss exclusion using phrase "any insured" conflicted with Michigan standard policy and thus were void); *Osbon v. National Union Fire Ins. Co.,* 632 So.2d 1158 (La. 1994) (exclusion for losses arising out of any act committed by "you or at your direction" and defining "you" and "your" as the "named insured," conflicted with Louisiana statutory standard policy which used phrase "the insured" and thus, innocent insured was not barred from recovering under policy); *Fireman's Fund Ins. Co.,* 212 Ga.App. 262, 441 S.E.2d 436 (concealment and fraud condition using the phrase "an insured," conflicted with Georgia statutory standard fire insurance policy using phrase "the insured" and thus, the policy at issue had to be reformed to conform with the minimum coverage provided in the standard policy).

■ At oral argument, plaintiff conceded that the concealment and fraud condition in the policy at issue conflicts with the Code and should be conformed to the Code. I agree with both parties on this issue. Plaintiff argues, however, that the Code mandates specific language only for the concealment and fraud condition and because plaintiff equally relies on the intentional act exclusion to deny coverage, denial of coverage is still proper.

In support of its argument, plaintiff relies on portions of the Code allowing addi-

tions to an insurance policy beyond what is required by the standard policy language. ORS 742.246. That statute allows a fire insurer to add other conditions, provisions, and agreements to the provisions required by ORS 742.202, as long as they are not in conflict with the law or contrary to public policy. *Id.*

Clow argues that the intentional loss exclusion is in conflict with the Code because it uses "any" insured as opposed to "the" insured and thus, as with the concealment and fraud condition, it must be conformed to the statutory standard language. Clow maintains that the Oregon Legislature's use of "the insured" in the statute mandating the language for the concealment and fraud condition, demonstrates the Legislature's intent to establish a public policy that an innocent co-insured should not be denied coverage for the bad acts of someone else, even another named insured. *See, e.g., Watson,* 566 N.W.2d at 691 (holding that the Minnesota legislature's use of "the insured" demonstrated "a general intent to compensate an innocent co-insured spouse despite the intentional acts of the other insured spouse.").

Plaintiff correctly notes that, in contrast to the concealment and fraud condition, the Code prescribes no express intentional loss language. Plaintiff argues that because the purpose and scope of an intentional act exclusion are distinct from those of a concealment and fraud condition, it is erroneous to assume, without an express legislative directive, that the same public policy expressed in regard to the concealment and fraud condition applies to an intentional loss exclusion. I agree with plaintiff.

The concealment and fraud condition and the intentional act exclusion cover different subject matters. The concealment and fraud condition of the policy at issue, directed at the concealment or misrepresentation made in connection with the coverage form, the covered property, an interest in the covered property, or a claim, is much broader in scope than the intentional act exclusion. Its aim is to deny coverage

to the maker of any misrepresentation or concealment, as long as the maker is an insured as defined in the policy. The Code's concealment and fraud is similarly broad. It allows a denial of coverage to the maker of a misrepresentation or a concealment concerning the insurance or any interest of the insured, as long as the maker is "the insured."

In contrast, the intentional loss exclusion is directed at an extremely narrow category of acts: intentional destruction of the insured property. Its purpose is limited: to deny coverage in situations where any insured has intentionally destroyed the insured property.

The concealment and fraud condition and the intentional act exclusion are aimed at different factual scenarios and take into account different moral hazards. The Legislature's intent has been expressed only for the statutory concealment and fraud condition's "the insured" language. That limitation deals with the insured's attempt to misrepresent whether a loss occurred or the amount of the loss, regardless of the cause of the loss. No legislative intent has been expressed, clearly or otherwise, with respect to an insurer's desire to not insure losses caused by the intentional act of any insured. *See, e.g., Amick,* 862 F.2d at 706 (noting cases holding that insurance providers should be able to refuse to bear the risk of loss to property intentionally caused by an insured); *Spezialetti,* 759 F.2d at 1141 (noting concerns of collusion and fraud).

I cannot conclude, without any express legislative direction, that the Legislature intended such an outcome. Accordingly, I conclude that the Legislature's use of "the insured" in the statutorily mandated concealment and fraud condition does not suggest an intent to modify other insurance provisions not enunciated in the Oregon Insurance Code and not otherwise in conflict with the law or public policy. *See Lane v. Security Mut. Ins. Co.,* 256 A.D.2d 1100, 682 N.Y.S.2d 777, 778 (N.Y.App.Div. 1998) (refusing to extend statutory standard policy to invalidate intentional loss

exclusion when the standard policy was "silent with respect to such an exclusion" and did not define the term "insured").

## CONCLUSION

I recommend that plaintiff's motion for summary judgment (# 46) be granted and that Clow's motion for summary judgment (# 50) be denied.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due December 27, 1999. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due January 10, 2000, and the review of the Findings and Recommendation will go under advisement on that date.

December 9, 1999.